NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0303n.06

Case No. 23-3737

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>

RICARDO RODRIGUEZ SANCHEZ,

    Petitioner,

v.

TODD W. BLANCHE, Acting U.S. Attorney
General,

    Respondent.

</td><td>

)
)
)
)
)
)
)
)
)
)
)
)

</td><td>

**FILED**

Jul 14, 2026

KELLY L. STEPHENS, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

O P I N I O N

</td></tr>
</table>

Before: MOORE, NALBANDIAN, and MATHIS, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Ricardo Rodriguez Sanchez overstayed his short-term visa to the United States by many years before being subject to removal. Even so, he argued before the immigration judge overseeing his case that his children would face hardships without him that warranted cancellation of removal. The immigration judge disagreed, and the Board of Immigration Appeals affirmed without a written opinion. Because we agree with the IJ's finding that Rodriguez Sanchez failed to show that his children would suffer abnormal hardship and with the BIA's decision to summarily affirm, we deny the petition for review.

## I.

Ricardo Rodriguez Sanchez, a native and citizen of Panama, entered the United States in spring 2006 on a visa that was valid for only a few months. But he stayed in the country for many years, and in 2017, the government charged him as removable and issued a notice to appear.

Rodriguez Sanchez conceded removability, but applied for cancellation of removal based on the hardship his children might face without him.

In 2019, the IJ heard Rodriguez Sanchez's testimony supporting his request for cancellation of removal. At the time of the hearing, Rodriguez Sanchez hadn't seen or spoken with three of his four children since he and their mother divorced about four years earlier. He testified that the youngest of his four children, R.J., would suffer extraordinary hardship upon his removal. Although Rodriguez Sanchez had never formally attempted to gain visitation or custody rights, he kept abreast of R.J.'s development through daily contact with one of his daughters, Amanda. Rodriguez Sanchez sent Amanda $450 a month to help with "medical care" for R.J., who is deaf in one ear, "and for the expense of the home" even though he "d[id]n't have an obligation" to do so. Hr'g Tr., Admin. R., pp.100, 122. But Rodriguez Sanchez didn't know how much of that $450 reached R.J., or whether any of it contributed to his medical expenses. And there isn't any evidence that, without the $450, R.J. wouldn't be able to receive the treatment he needs for his hearing. Moreover, Rodriguez Sanchez testified that R.J.'s hearing was "perfect[]" at the time because of his hearing aids, and that he was doing well in school. *Id.* at pp.101, 129. Rodriguez Sanchez also indicated in his testimony that he has another daughter, Jocelyn. But aside from identifying her on the record, he didn't indicate how—if at all—her life would change if he returned to Panama because she had graduated high school and was going to join the military.

The IJ found Rodriguez Sanchez's testimony credible, but denied his application for cancellation of removal. In his oral decision, the IJ concluded that R.J. and Jocelyn were "qualifying relatives" whose hardship without Rodriguez Sanchez factored into the cancellation analysis. But he also found that Rodriguez Sanchez's testimony and documentary evidence failed to establish that the children would suffer the "exceptional and extremely unusual hardship"

required to warrant cancelling his removal. Oral Decision, Admin. R., p.51. He found that "[t]he only loss [R.J.] will suffer is some portion" of the $450 that Rodriguez Sanchez sent to Amanda every month, and that R.J. is otherwise "now 100 percent hearing-abled." *Id.* at p.53. And regarding Jocelyn, the IJ concluded that the evidence and testimony failed to show that her life would "change in any manner, shape, or form if [Rodriguez Sanchez] is no longer in the United States" because she had already graduated high school and was "going into the military." *Id.*

Rodriguez Sanchez appealed the IJ's denial to the Board of Immigration Appeals, which affirmed without writing a separate opinion. So he petitioned us for review.

## II.

Rodriguez Sanchez challenges the denial of his request for cancellation of removal on two grounds. First, he argues that R.J. and Jocelyn would face exceptional and extreme hardship without him. And second, he faults the BIA for affirming the IJ without writing a separate opinion. Neither argument convinces.

## A.

We review the denial of cancellation of removal for substantial evidence. *Baltazar Us v. Blanche*, 174 F.4th 509, 513 (6th Cir. 2026). That means that we'll grant the petition only if "any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* at 512 (citation modified). And when the BIA affirms the IJ without issuing an opinion of its own, "we review the IJ's decision directly." *Shkabari v. Gonzales*, 427 F.3d 324, 327 (6th Cir. 2005).

Four statutory factors control cancellation of removal. *See* 8 U.S.C. § 1229b(b)(1). Only the fourth—that the alien's "removal would result in exceptional and extremely unusual hardship" to the alien's child, "who is a citizen of the United States or an alien lawfully admitted for permanent residence"—is at issue here. *Id.* § 1229b(b)(1)(D). That factor requires the alien to

prove "hardship sustained by . . . qualifying relatives that's significantly different from or greater than the hardship that a deported alien's family normally experiences." *Moctezuma-Reyes v. Garland*, 124 F.4th 416, 422 (6th Cir. 2024). In other words, the hardship must fall "well outside the norm." *Id.*

The IJ properly concluded that the sole hardship R.J. might face—losing some portion of the $450 that Rodriguez Sanchez sends to Amanda every month—isn't exceptionally or extremely unusual. As we've explained elsewhere, "financial . . . strains are the typical results of removal; they aren't rare." *Id.* at 423. Moreover, Rodriguez Sanchez testified that he'd be able to find work upon returning to Panama, even though it would be difficult and wouldn't offer the kind of pay he can find in the United States. And we've held that "even if getting a job [in the country of removal] may prove difficult," the alien's "ability to work . . . counsels against upsetting the [IJ's] determination." *Id.* Rodriguez Sanchez's testimony about R.J.'s wellbeing, too, shows that the latter has no "compelling special needs" that could support cancellation. *Id.* at 423–24 (citation modified). By Rodriguez Sanchez's own telling, R.J.'s hearing aids have fully corrected his hearing, and R.J. is performing "regular[ly]" in school. Admin R., pp.99–101. And there is no evidence that, without the $450 Rodriguez Sanchez provides monthly, R.J. would be unable to receive the medical treatment he needs. The IJ also properly concluded that Rodriguez-Sanchez didn't supply any information supporting a hardship finding as to his other qualifying child, Jocelyn. His only testimony about Jocelyn indicated that she was in perfect health, had finished high school, and planned to enter the military.

At bottom, Rodriguez Sanchez hasn't shown us that "any reasonable adjudicator would be compelled to conclude" that his qualifying children would face exceptional and extremely unusual hardship upon his removal. *Baltazar Us*, 174 F.4th at 512 (citation modified). Nor are we

convinced by his argument that the IJ considered the hardship factors (like financial strain, special educational needs, and others) in isolation rather than in the aggregate, given the IJ's explicit statement that he'd consider the evidence in the aggregate and his simultaneous discussion of the hardship factors relevant to R.J. and Jocelyn.  So we won't disturb the IJ's hardship finding.

## B.

Next, Rodriguez Sanchez argues that the BIA erred by affirming the IJ without a written opinion.  The regulations governing the BIA's appellate process require it to streamline its docket by summarily affirming when it determines that the IJ was correct (or that any error was harmless) and either "[t]he issues on appeal are squarely controlled by existing . . . precedent and do not involve the application of precedent to a novel factual situation" or "[t]he factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion."  8 C.F.R. § 1003.1(e)(4)(i).  Apart from reciting those labels, Rodriguez Sanchez hasn't explained how his case involves either novel or substantial questions.  So we have no reason to second-guess the BIA's summary affirmance.

## III.

For those reasons, we deny the petition for review.